IN THE UNITED STATES DISTRICT COURT N.
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

FILED
APR - 7 2006
MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT

| | |
|---|---|
| MICHAEL GIBBS, | ) |
| Plaintiff, | ) ) ) |
| v. | ) No.: ) |
| CHICAGO POLICE OFFICER NICHOLAS CORTESI, STAR NO. 15112, CHICAGO POLICE OFFICER R. SHULTZ, STAR NO. 13882, Individually and as employee/agents of the CITY OF CHICAGO, a municipal Corporation, | ) JURY DEMAND ) ) ) ) 06CV1983 ) JUDGE DARRAH ) MAG. SCHENKIER |
| Defendants. | ) |

## COMPLAINT AT LAW

NOW COMES, MICHAEL GIBBS, by and through his attorney, JEFFREY J. NESLUND, and in complaining of the Defendants, CITY OF CHICAGO and CHICAGO POLICE OFFICER NICHOLAS CORTESI, STAR NO. 15112 and CHICAGO POLICE OFFICER R. SHULTZ, STAR NO. 13882, state as follows:

### INTRODUCTION

1. This is an action for civil damages brought pursuant to 42 U.S.C. Sec. 1983 for the deprivation of plaintiff's constitutional rights. This Court has jurisdiction pursuant to 28 U.S.C. Sec. 1331 and 1343.

2. Venue in this district is proper pursuant to 28 U.S.C sec. 1391 (b), because the facts which give rise to the claims asserted herein occurred in the Northern District of Illinois.

3. Plaintiff, MICHAEL GIBBS, is an individual who at all times relevant hereto was living in the Northern District of Illinois.

1

4. Defendants, CHICAGO POLICE OFFICER NICHOLAS CORTESI, STAR NO. 15112 and CHICAGO POLICE OFFICER R. SHULTZ, STAR NO. 13882, were at all times material hereto, duly appointed Chicago Police Officers employed by the City of Chicago acting in the capacity of sworn law enforcement officials.

## FACTUAL SUMMARY

5. On July 19, 2004, the Plaintiff was with friends in the common area of the Chicago Housing Authority ("CHA") Washington Park complex located at 3940 S. Prairie in Chicago, Cook County, Illinois.

6. The DEFENDANT OFFICERS arrived at the above location as the Plaintiff began to walk away from his friends.

7. The DEFENDANT OFFICERS then chased the Plaintiff into the CHA building located at 4008-12 S. Prairie in Chicago, Cook County, Illinois.

8. Defendant Officer Cortesi tackled the Plaintiff on the second floor stairwell of the above location.

9. Defendant Officer Cortesi then began to strike the Plaintiff in the fact with the handle of his firearm.

10. The DEFENDANT OFFICERS continued to punch and kick the Plaintiff about his head and body.

11. The DEFENDANT OFFICERS handcuffed the Plaintiff and dragged the Plaintiff down the stairs and out of the building at 4008-12 S. Prairie.

12. The Plaintiff was transported from the scene to Northwestern Memorial Hospital's Trauma Center where the Plaintiff was diagnosed with multiple nasal bone fractures, facial

lacerations and other injuries.

13. On July 19, 2004, at approximately 6:00 a.m., the Plaintiff was discharged from Northwestern's Trauma Center and held in custody at the Chicago Police Station's 2nd District lock-up.

14. On July 91, 2004, at approximately 4:30 p.m., attorney Sam Adam, Jr., arrived at the 2nd District and met with the Plaintiff.

15. Mr. Adam immediately informed the desk Sergeant, Sgt. Roman, Star No. 1733, that the Plaintiff was spitting up blood, complained of chest pains and was in need of medical attention.

16. Sgt Roman informed Mr. Adam that he had just gotten on duty and it "was not his problem."

17. Sgt. Roman also told Mr. Adam that the Plaintiff's condition was "not his concern" and refused to notify the Office of Professional Standards (O.P.S.).

18. Mr. Adam demanded to speak to the Watch Commander. Sgt. Roman refused and Mr. Adam began to leave the 2nd District to send a telegram to Chicago Police Superintendent Phil Cline.

19. Sgt. Roman called Mr. Adam back into the police station and informed Mr. Adam that his Watch Commander was making him notify O.P.S. of the Plaintiff's condition, but that Mr. Adam should write down in his notes that Sgt. Roman refused to call O.P.S. and that he would continue to refuse, but that his superior was ordering him to do it.

20. At 5:15 p.m. on July 19, 2004 the Plaintiff was transported to Provident Hospital at 500 E. 51st in Chicago for medical treatment for his various injuries from his earlier beating by the DEFENDANT OFFICERS.

21. The Plaintiff was charged with Unlawful Use of a Weapon. All criminal charges were subsequently dismissed in a manner indicative of the Plaintiff's innocence.

## COUNT I
## 42 U.S.C. § 1983: False Arrest/Unlawful Detention

22. Plaintiff re-alleges and incorporates paragraphs 1-21 as fully stated herein.

23. As described above, DEFENDANT OFFICERS falsely arrested and unlawfully detained Plaintiff without justification and without probable cause.

24. The misconduct described in this Count was undertaken with malice, willfulness, and reckless indifference to the rights of others, and specifically, the rights of the plaintiff.

25. As a result of the above-described wrongful infringement of Plaintiff's rights, Plaintiff suffered damages, including but not limited to mental distress and anguish.

## COUNT II
## 42 U.S.C. § 1983: Excessive Force

26. Plaintiff re-alleges and incorporates paragraphs 1-21 above as fully stated herein.

27. The acts of the DEFENDANT OFFICERS were a deliberate and malicious deprivation of the Plaintiff's constitutional rights against excessive force as guaranteed to the Plaintiff by the Fourth Amendment of the Constitution and made applicable to the states by the Fourteenth Amendment.

28. As a result of the unreasonable and unjustifiable excessive force used by the DEFENDANT OFFICERS, the Plaintiff suffered physical and emotional injuries, and other damages in violation of 42 U.S.C. 1983.

## COUNT III
### State Law Claim: Malicious Prosecution

29. Plaintiff re-alleges and incorporates paragraphs 1-21 above as fully stated herein.

30. Plaintiff was improperly subjected to judicial proceedings for which there was no probable cause. These judicial proceedings were instituted and continued maliciously, resulting in injury, and all such proceedings were terminated in Plaintiff's favor in a manner indicative of innocence.

31. DEFENDANT OFFICERS accused Plaintiff of criminal activity knowing those accusations to be without probable cause, and they made written and other statements with the intent of exerting influence to institute and continue judicial proceedings.

32. Statements of DEFENDANT OFFICERS regarding Plaintiff's alleged culpability were made with knowledge that the statements were false and perjured. In so doing, the DEFENDANT OFFICERS fabricated evidence and withheld exculpatory information.

33. The misconduct described in this Count was undertaken with malice, willfulness, reckless indifference to the rights of others.

34. As a result of the above-described wrongful infringement of Plaintiff's rights, he has suffered financial and other damages, including but not limited to substantial mental stress and anguish.

35. The misconduct described in this Count was undertaken by the DEFENDANT OFFICERS within the scope of their employment such that their employer, CITY OF CHICAGO, is

liable for their actions.

## COUNT IV
## Monell Claim
### (City of Chicago)

36. Plaintiffs re-allege and incorporate paragraphs 1-21 above as fully stated herein.

37. The misconduct described in this complaint was undertaken under the policy and practice of the Chicago Police Department in that:

    a. As a matter of both policy and practice, the Chicago Police Department directly encourages the misconduct described above, and is thereby the moving force behind, the very type of misconduct at issue here by failing to adequately train, supervise and control its officers, such that its failure to do so manifests deliberate indifference;

    b. As a matter of both policy and practice, the Chicago Police Department facilitates the very type of misconduct at issue here by failing to adequately punish and discipline prior instances of similar misconduct, thereby leading Chicago Police Officers to believe their actions will never be scrutinized and, in that way, directly encouraging future abuses such as those affecting Plaintiff; specifically, Chicago Police Officers accused of excessive force can be confident that the Office of Professional Standards will not investigate those accusations in earnest and will refuse to recommend discipline even where the Officer has engaged in excessive force;

    c. Generally, as a matter of widespread practice so prevalent as to comprise municipal policy, officers of the Chicago Police Department abuse citizens in

a manner similar to that alleged by Plaintiff on a frequent basis, yet the Chicago Police Department makes findings of wrong doing in a disproportionately small number of cases;

d. Municipal policy-makers are aware of, and condone and facilitate by their inaction, a "code of silence" in the Chicago Police Department, by which officers fail to report misconduct committed by other officers, such as the misconduct at issue in this case;

e. The City of Chicago has failed to act to remedy the patterns of abuse describe in the preceding sub-paragraphs, despite actual knowledge of the same, thereby causing the types of injuries alleged here;

f. As a matter of express policy, the City of Chicago does not retain any records which are more than five years old documenting allegations of excessive force against police officers, thereby preventing the City from ascertaining any patterns of abuse which might develop over the course of a police officer's career;

g. As a matter of express policy, the City of Chicago refuses to take into consideration patters of allegations of civil rights violations when evaluating the merits of any particular complaint. In other words, if a police officer is accused of the same sort of misconduct twenty times in row the Office of Professional Standards ("O.P.S.") is forbidden by the City from considering those allegations if they are deemed unsustained; and

h. The problem with the policy identified in the preceding paragraph is that by

its own accounting, the City sustains less than 5% of the complaints brought against police officers for violations of civil rights.

38. The DEFENDANT, CITY OF CHICAGO, was aware the DEFENADNT OFFICERS engaged in the misconduct described in this complaint in the attempt to secure informants and punish citizens, such as the Plaintiffs who do not comply with DEFENADNT OFFICERS' threats.

39. Such deliberate indifference by the City of Chicago resulted in a custom and defacto policy of failing to receive, investigate, or act on citizen complaints of misconduct and abusive behavior by DEFENDANT OFFICER.

40. As a result of the above described custom and defacto policy of DEFENADNT, CITY OF CHIACGO, the Plaintiff suffered financial and other damages, including, but not limited to, substantial mental stress and anguish.

## COUNT V
### State Law claim: Indemnification

41. Plaintiff re-alleges and incorporates paragraphs 1-21 above as fully stated herein.

42. In Illinois, public entities are directed to pay any tort judgment for compensatory damages for which employees are liable within the scope of their employment activities. 735 ILCS 10/9-102.

43. DEFENDANT OFFICERS are or were employees of the CITY of CHICAGO and acted within the scope of their employment in committing the misconduct described herein.

## REQUEST FOR RELIEF

44. Plaintiff, MICHAEL GIBBS, respectfully requests that the Court:

   a. Enter judgment in his favor and against Defendants, CHICAGO POLICE OFFICER NICHOLAS CORTESI, STAR NO. 15112 and CHICAGO POLICE OFFICER R. SHULTZ, STAR NO. 13882;

   b. Award compensatory damages against Defendants, CHICAGO POLICE OFFICER NICHOLAS CORTESI, STAR NO. 15112 and CHICAGO POLICE OFFICER R. SHULTZ, STAR NO. 13882;

   c. Award attorneys' fees against Defendants, CHICAGO POLICE OFFICER NICHOLAS CORTESI, STAR NO. 15112 and CHICAGO POLICE OFFICER R. SHULTZ, STAR NO. 13882;

   d. Award punitive damages against CHICAGO POLICE OFFICER NICHOLAS CORTESI, STAR NO. 15112 and CHICAGO POLICE OFFICER R. SHULTZ, STAR NO. 13882 in their individual capacities; and

   e. Grant any other relief this Court deems just and appropriate.

**JURY DEMAND**

Plaintiff, MICHAEL GIBBS, demands a trial by jury under the Federal Rule of Civil Procedure 38(b) on all issues so triable.

Respectfully submitted,

JEFFREY J. NESLUND
Attorney for Plaintiff

Jeffrey J. Neslund
Law Offices of Jeffrey J. Neslund
150 North Wacker Drive
Suite 2460
Chicago, Illinois 60606
(312) 223-1100